Ruffin, C. J.
The unfinished wills were admissible as evidence to both of the points of capacity and undue influence ; as they tended to show intelligence and a settled purpose to make many of the dispositions contained in the script in contest. Minutes for a will are common evidence of capacity and the animus testandi; and letters, or verbal declarations, containing expressions of preferences for particular persons, or importing a voluntary purpose of making particular dispositions, are the ordinary means of rebutting the imputation of undue solicitation or influence.
With our mode of trying contests about the validity of wills, by jury, there is naturally associated the ideas of parties ana the rules of evidence applied to similar trials in a proceeding at common law — in which the side, on which one is a party, corresponds with his personal interests. Hence, a notion seems to have been somewhat prevalent, that in contests of this kind, a party in interest one way may be most useful to himself and those in the like interest, by taking on the record a position in opposition to the side on which his interest lies, so as to make declarations, apparently against, but in reality for, himself, and have them oflered in evidence by those in interest and conspiring with him. The case of Enloe v Sherrill, 6 Ire. 212, is an instance of such an attempt, which was defeated ; and this case seems to be another, which also properly met the same *359 fate. Against such practices the Profession ought to guard the Court, and, no doubt, would, if cognizant of the fraud, at the framing of the issue. But, if not discovered then, it is the duty of the Court, whenever it may be discovered, to protect itself and the parties in interest from imposition; and it is, of course, within the province of the Court to frame such rules, as to the mode of conducting such proceedings, as may be effectual to that end. The proceeding in probate causes is not similar to those at common law, though the trial in each be by jury; for, in its nature, it is a proceeding in rent, to which there are not parties in the strict sense of the common law, and the Court retains that exclusive power over the subject, which arises from the provision in the statute, that the issue is “ to be made up under the direction of the Court.” There is no doubt, we think, that, when the purposes of justice require it, the Court may* modify the issue, both in respect of scripts and parts of scripts, and of the positions of the parties in interest, so as to have the contest upon the issue determined conclusively, and upon its merits, as existing in fact, and not as they may be made to appear upon the declarations of fictions fabricated for the purposes of defeating a decision accordant with the very fact. In the Courts of Probate in our mother country, the propounding is on oath; and probate in common form may pass on that alone. Our statute requires proof by at least one witness, in every instance; and hence it has come to be the usage not to swear the executor at the propounding, but only to administer to him the oath, for the execution of the will, after sentence has been pronounced for it. Perhaps it were better, if the executor were still required to propound on oath in the first instance, as well as to take the other oath. For, he cannot honestly propound a script which he knows, or believes, not to be the will of the party deceased. Indeed, by propounding, he stands pledged to take his oath to that effect, since it is a part of the oath of an executor, prescribed in the *360 statute, that he “ believes this writing to be and contain the last will and testament” of the party deceased. If he believes otherwise, though it be proper to summon him to see proceedings in order to make the sentence, whatever it may be, conclusive on all in interest, his duty to the Court and to the ends of justice plainly is, either to contest the probate openly, or, at the least, to see proceedings, literally speaking, and not be an actor in the proceeding. It is a fraud upon the law to take part in the propounding, in collusion with the caveators. He ought to act as he would, if all the other parties, besides himself, were propounders ; in which case, he would be obliged to stand forth in opposition to the probate. In cases of such fraud and collusion, whereby one, for his own interest, aims to have such control directly, or indirectly, over the trial of the issue as to secure a decision against himself and those with whom he acts in pretence, and in favor of their adversaries, the ground fails, on which the rule for admitting declarations is founded — namely, that they aie against the interest of the person making them; and, therefore, the rule itself has no application in those instances. It seems to the Court, therefore, that, in cases of reasonable suspicion of good faith in an executor, in uniting with the other executors or parties in interest in propounding a script, he might and ought to be required to take at once an oath as to his belief of its validity, and upon his refusal the Court should allow those in interest to prosecute by themselves. That would have been a proper course here, and, perhaps, the court would have adopted it, if it appeared that the other propounders had been aware of the collusion in time to have asked it before the trial. But as far as appears, this evidence was sprung upon them with out any ground of suspicion; and, therefore, in furtherance of the principle mentioned, the Court might have rejected the declarations when offered in evidence, and consequently, his Honor was right, after they had been inadvertently *361 admitted, in advising'the jury, that they ought to allow no weight to them.
Whatever error may exist in the other instructions to-the jury, it would seem not to entitle the appellants tó a venire de novo, because, upon the facts stated, it does not appear, that it could be injurious to them. The instructions relate exclusively to the validity of the script in contest, as affected by the other paper, called the will of 1834. Now, if that paper was of no force as a will, its existence could not in any degree operate upon that in contest. It does not appear in the exception to have been executed, so-as to make it a will. As a will of 1834, it was revoked by an express clause of revocation in that of 1842, if the latter be a will to any purpose. Then, looking at it as executed also in 1842, as part of the will, it is not seen, that it could have been a will or part of a will; no copy is set forth in the bill of exceptions, whereby it might appear to have been attested; nor is it otherwise stated, that it was either a holograph, or attested by the witnesses, Allman and Thomas, or any others. Those persons state merely, that the-party, Love, “re-executed-it;” and one of them said, that Love mentioned, that he “ signed” the old will to cure the defect caused by “his name” being torn off. His Honor, who is to be supposed to speak more accurately, applies to the transaction in reference to that paper the term “ republication” merely, which he informed the jury might be by parol. It cannot be inferred, therefore, that the execution in 1842 of the paper of 1834, was any thing more than the re-signing it by the party deceased; and, hence, it was not a will, because it is not stated to have been written by him-sdlf, nor witnessed as required by the statute. It could, consequently, have no effect upon the paper of 1842, unless it was correct, as laid down by the jury, that it might be republished by parol, and was thus republished. That is understood to mean, that republication may be by oral declarations merely ; and with that' position the Court does *362 concur, either as applied to this case, or as a general doctrine. It-had no application to the case, because, in point of fact, if there was a republication at all, it was not by words alone, but by the party’s act of signing the paper, with the declaration that he did soto make it his will again, either absolutely or sub modo. But supposing that in that respect the case were otherwise, and that there had been nothing more than a declaration made animo republicandi in 1842, that the paper, even with his name to it, as at first, was then his will, it was not correct to say, that would be a republication. Supposing it to have been a holograph, with the original date left in it, it is at least, very doubtful, whether there could be an oral republication, as there was occasion to say in the cases arising on Wilson’s will in Edgecombe, But, as just said, this does not appear to be a paper of that kind; and, consequently, it cannot be acted on as if it were. Then, as a paper not written by the party deceased, and, therefore, requiring attestation, and supposing it to have been duly signed and attested, in 1834, it could not he republished by word of mouth merely ; because it was decided early after the statute of frauds and has been ever since considered as settled, that there cannot be a republication, unless by re-execution of the same instrument, or by the execution of a codicil, with the ceremonies required by the statute. Masten v Savage, 1 Ves. Sr. 440. It is obvious the contrary doctrine would contravene the statute, since it would allow after purchased land to pass upon a verbal declaration aione. It is true, there might have been such a republication of the will in respect of the personal estate prior to July, 1841; but after that time, the act of 1840 puts will of real and personal estate on the same footing. There was, therefore, no fact to make out the paper of 1834, to have heen in form of a will, and the controversy was exclusively upon the validity of the script of 1842, within itself, unless it be supposed, that the one of 1834 was not only “ executed” by the party de» *363 ceased, but also attested by Allman and Thomas. If it were in the power of this court to send cases back to have the facts more fully stated in the bill of exceptions, as we might if the case came here upon a defective special verdict, the Court would not proceed to a final adjudication, without having the fact on this point explicitly stated, one way or the other. This is adverted to, in 01 der to engage the attention of Counsel, in drawing their exceptions, to the necessity for stating every fact distinctly, which is requisite to show, that in laying down a rule of law there was error to the prejudice of the appellant. The Court, though allowing much for the haste and multifarious engagements of their circuit, is unable to infer facts, upon which the exception is altogether silent. But in this particular case it is not of so much consequence, because, if those witnesses did attest the papers of 1842, as it is called, the Court is of opinion, that according to the evidence of Allman — which the verdict affirms to be true — it was not the will or a part of the will. Publication is as necessary to constitute a will, as delivery is to a deed. The statute, in prescribing particular ceremonies in the execution of wills, though not using the term publication, does not dispense with it, and it has never been considered as merged in the other ceremonies. It is as necessary now as it ever was, though now, as ever, it may be inferred from circumstances as well as directly established; 1 Powell Dev. 90. Publication is a declaration or act of the party, showing the instrument to he Ms will; and the question is, whether what was done here can, in law, be deemed a publication of the paper of 1834, in that sense. How it might have been if the paper itself had in the attestation clause said, that it was published or “ republished,” as well as signed by the party, we do. not say. But, nothing of that kind appearing, it was necessary, that the republication should be affirmatively shown which, of course, could only be by the testimony of the witnesses to the acts or declarations of the party. Now, *364 the declaration of this party was, that the instrument was not his will — at least, not then. He published one paper-as his will in presentí and absolutely, and of the other he said, that he published it as a paper, which might be his will in certain events, which would be destructive of the former. The doubt, if there be one, is, whether the paper of 1834 ever could become a valid instrument upon such a publication. It certainly was not published as boing immediately the will, and cannot impair the validity of the other or its efficacy as being alone the will; and, therefore, the sentence must be affirmed.
These observations dispose of the controversy between the parties. Yet it is proper the Court should notice the closing direction to the jury to find against tiie script of 1834, upon the ground, that it would be then only a part of the will — because it lays down a rule of much importance in practice, which the Court deems erroneous. By such a finding, the script would be finally pronounced against, though it be admitted to be a part of the will; which seems manifestly wrong. The proper course in the case would have been to embrace both of the papers in the issue, and to have it special, whether both were, or one was, the will; or whether parte, and which parts, were. But when one script only is put in issue, and that is only part ot the will, xhe verdict ought not to be against it altogether, but should, rather, be according to the truth — that it was a part. For, although such a finding would be imperfect, yet it is better it should conclude nothing, than that it should untruly conclude a thing, as being in no part the will, because it was but a part. Upon such a finding, the parties would be under the necessity of asking the Court to set it aside, and remodel the issue, so as to embrace both scripts ; and thus the whole case would be brought properly up. But in the other way an intestacy would be effectually established; because, after sentence against one script, that the party did not devise thereby, because it did not contain all his *365 dispositions, a like sentence must follow against the other script, for the same reason; and thus both would be set aside, and the party left without a will, though the rule supposes that he had a will, and the two together made it.